U.S. COURTS
MAY 0 8 2012
Rcvd_____Filed_____Time_____
ELIZABETH A. SMITH
CLERK, DISTRICT OF IDAHO

WENDY J. OLSON, IDAHO STATE BAR NO. 7634
UNITED STATES ATTORNEY
KEVIN T. MALONEY, IDAHO STATE BAR NO. 5095
ASSISTANT UNITED STATES ATTORNEY
JAMES SMITH
SPECIAL ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF IDAHO
800 E. PARK BOULEVARD, SUITE 600
BOISE, IDAHO 83712-7788
TELEPHONE: (208) 334-1211
FACSIMILE: (208) 334-1413

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR 12-0116-S BLW |
| Plaintiff, | Case No. |
| vs. | **RULE 11 PLEA AGREEMENT** |
| JEREMY DELUCA, | |
| Defendant. | |

## I. GUILTY PLEA

A. **Summary of Terms.** Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(A) and (B), the defendant, the attorney for the defendant, and the Government[1] agree that the defendant will plead guilty to Count(s) One through Six of the Information, which each charge the defendant with a Class A misdemeanor of introduction and delivery for introduction into interstate commerce of drugs which were misbranded as defined at 21 U.S.C. § 352(a), in violation of 21 U.S.C. §§ 331(a) and 333(a)(1).

This plea is voluntary and did not result from force, threats, or promises, other than any promise made in this Plea Agreement. Upon acceptance of the defendant's guilty plea(s), and the defendant's full compliance with the other terms of this Agreement, the Government, under Federal Rule of Criminal Procedure 11(c)(1)(B), will recommend a fine of $100,000 per count, and probation. The defendant agrees to recommend the same. The Government will not recommend incarceration or electronic monitoring. Further, under Federal Rule of Criminal Procedure 11(c)(1)(A), the Government will not bring any other charges against the defendant, Jeremy DeLuca, based upon information currently known to the Government arising out of the investigation of Bodybuilding.com, LLC (hereafter, "Bodybuilding.com"), or concerning the distribution, through Bodybuilding.com, LLC, of drugs labeled as "dietary supplements", as described in the Factual Basis. This agreement applies only to Jeremy DeLuca, in his personal capacity, and not to any other person or entity. The defendant understands that the Court may consider uncharged "relevant conduct," in arriving at an appropriate sentence pursuant to USSG

[1] The word "Government" in this Agreement refers to the United States Attorney for the District of Idaho.

§ 1B1.3.

**B.** **Oath**. The defendant will be placed under oath at the plea hearing. The Government may use any statement that the defendant makes under oath against the defendant in a prosecution for perjury or false statement.

## II. WAIVER OF CONSTITUTIONAL RIGHTS AT TRIAL

The defendant understands that by pleading guilty, he waives the following rights: 1) the right to plead not guilty to the offense(s) charged against the defendant and to persist in that plea; 2) the right to a trial by jury, at which the defendant would be presumed innocent and the burden would be on the Government to prove the defendant's guilt beyond a reasonable doubt; 3) the right to have the jury agree unanimously that the defendant was guilty of the offense; 4) the right, at trial, to confront and cross-examine adverse witnesses; 5) the right to present evidence and to compel the attendance of witnesses; and 6) the right not to testify or present evidence without having that held against the defendant. If the District Court accepts the defendant's guilty plea, there will be no trial.

## III. NATURE OF THE CHARGES

**A.** **Elements of the Crime**. The elements of the crime of unlawful introduction and delivery for introduction into interstate commerce of misbranded drugs, as defined at 21 U.S.C. § 352(a), in violation of 21 U.S.C. §§ 331(a) and 333(a)(1), as charged in Counts One through Six, are as follows:

1. The products I Force Methadrol, Nutra Costal D-Stianozol, I Force Dymethazine, Rage RV5, and Genetic Edge Technologies (GET) SUS500 were drugs as defined at 21 U.S.C. § 321(g);

2. I Force Methadrol, Nutra Costal D-Stianozol, I Force Dymethazine, Rage RV5, and Genetic Edge Technologies (GET) SUS500 were misbranded (hereinafter "the Misbranded Products"), pursuant to 21 U.S.C. § 352(a), in that their labeling was false and misleading, because it identified them as "dietary supplements," despite the fact that they were actually drugs;

3. Jeremy DeLuca, as President or Vice President of Bodybuilding.com, introduced and delivered for introduction into interstate commerce the Misbranded Products.

**B. <u>Factual Basis</u>.** If this matter were to proceed to trial, the Government and the defendant agree that the following facts would be proven beyond a reasonable doubt:

At all times material to the information, Jeremy DeLuca was the President or Vice President of Bodybuilding.com and had authority over products offered for sale on the Bodybuilding.com webstore. Bodybuilding.com's headquarters is in Meridian, Idaho. Bodybuilding.com is an on-line supplier of supplements, many of which are shipped from its warehouse in Boise, Idaho.

During the time period of June, 2007 through September 2009, Bodybuilding.com sold the following products: I Force Methadrol, Nutra Costal D-Stianozol, I Force Dymethazine, Rage RV5, and Genetic Edge Technologies (GET) SUS500. Bodybuilding.com sold these products, which were manufactured and packaged by others, labeled as dietary supplements. "Dietary supplements" are legally defined at 21 U.S.C. §321(ff) of the federal Food, Drug and Cosmetic Act, as amended by the Dietary Supplement Health and Education Act. Among other things, dietary supplements must contain one or more "dietary ingredients." A "dietary ingredient" is a vitamin; a mineral; an herb or other botanical; an amino acid; a dietary substance

for use by man to supplement the diet by increasing total dietary intake; or a concentrate, metabolite, constituent, extract, or combination of one of these dietary ingredients.

None of the five Misbranded Products were actually "dietary supplements." Instead, they were drugs, as defined at 21 U.S.C. § 321(g)(1)( c), because they contained synthetic anabolic steroids or synthetic chemical "clones" of anabolic steroids which were not dietary ingredients, and they were labeled and promoted as products which were intended to affect the structure and function of the human body (building muscle mass). As such, they were also misbranded drugs, as defined in 21 U.S.C. § 352(a), in that they were falsely and misleadingly labeled as "dietary supplements."

Within Bodybuilding.com and the supplement industry generally, these products, and others like them containing Superdrol, Tren, Madol, or similar substances, routinely were referred to as "prohormones." From the start of 2009 through July 2009, Bodybuilding.com had gross revenue of almost $1.8 million from the sale of prohormone products.

During 2008 and 2009, persons within Bodybuilding.com communicated regarding the nature of these products and the risks associated with selling them. The FDA compliance officer at Bodybuilding.com informed Bodybuilding.com's management, including Jeremy DeLuca, that prohormone products contained ingredients that did not qualify as dietary supplements.

An individual in a business who has responsibility and authority either to prevent or correct a violation of the Food Drug and Cosmetic Act is strictly liable for a misdemeanor criminal violation, regardless of the extent of that person's knowledge of the violations. As President or Vice President, and as a manager with authority over products offered for sale on the Bodybuilding.com webstore, Jeremy DeLuca is deemed responsible for Bodybuilding.com's

sales of misbranded products.

During this investigation, Bodybuilding.com made the following interstate sales of these products to a buyer acting in an undercover capacity for the FDA.

| Count | Sale Date | Shipped From / To | Product Name | Relevant Ingredient in Product |
|---|---|---|---|---|
| 1 | 8/6/2009 | ID to CA | I Force Methadrol | Superdrol a.k.a. methyldrostanolone or methasterone |
| 2 | 8/6/2009 | ID to CA | Nutra Coastal D-Stianozol | Madol a.k.a. DMT or desoxymethyltestosterone |
| 3 | 8/6/2009 | ID to CA | I Force Dymethazine | Superdrol a.k.a. methyldrostanolone or methasterone |
| 4 | 2/9/2009 | ID to CA | I Force Dymethazine | Superdrol a.k.a. methyldrostanolone or methasterone |

Bodybuilding.com also sold in interstate commerce the following products.

| Count | Time Period Sold | Shipped From / To | Product Name | Relevant Ingredient in Product |
|---|---|---|---|---|
| 5 | June 2009 - September 2009 | ID to nationwide | Rage RV5 | Labeled as containing Madol and Superdrol but actually containing 4-androstenedione |
| 6 | June, 2007 - September 2009 | ID to nationwide | Genetic Edge Technologies (GET) SUS500 | Tren a.k.a. 19-Nor-4,9(10)-androstadienedione |

## IV. SENTENCING FACTORS

**A. Maximum Penalties.** A violation of 21 U.S.C. Sec. 331(a), as charged in Counts One through Six, is a Class A misdemeanor, punishable by a term of imprisonment of up to one year, a term of supervised release of one year, probation of up to five years, a maximum fine of $100,000 per count, and a special assessment of $25 per count.

**B. Supervised Release or Probation.** The court may impose probation, as recommended by the parties, or prison. If the Court imposes probation, it may place the defendant on probation for up to five years and impose any lawful conditions of probation. Violations of probation may result in imprisonment.

If the Court imposes prison, following release from prison, the defendant may be placed on supervised release for one year. The law permits the combined prison time and term of supervised release to exceed the maximum term of incarceration for the crimes to which the defendant is pleading guilty. Violation of any condition of supervised release may result in further penalties and/or prosecution.

**C. Fines and Costs.** The Court may impose a fine. The agreement between the parties regarding the fine amount is not binding on the Court. The Court may also order the defendant to pay any costs of imprisonment, probation, and supervised release.

**D. Special Assessment.** The defendant will pay the special assessment(s) before sentencing and will furnish a receipt at sentencing. Payment will be made to the United States District Court, Clerk's Office, Federal Building and United States Courthouse, 550 West Fort Street, Fourth Floor, Boise, Idaho 83724.

**E. Restitution.** The parties anticipate no restitution in this case.

## V. UNITED STATES SENTENCING GUIDELINES

**A. Application of Sentencing Guidelines.** The Court must consider the United States Sentencing Guidelines (USSG) in determining an appropriate sentence under 18 U.S.C. § 3553. The defendant agrees that the Court may consider "relevant conduct" in determining a sentence pursuant to USSG § 1B1.3.

The Court is not a party to the Plea Agreement. The Plea Agreement does not bind the Court's determination of Sentencing Guidelines range. The Court will identify the factors that will determine the sentencing range under the Sentencing Guidelines. While the Court may take the defendant's cooperation, if any, and the recommendations of the parties into account, the Court has complete discretion to impose any lawful sentence, including the maximum sentence possible.

Recognizing that the Court is not bound by this Agreement, the parties agree to the recommendations and requests set forth below.

**B. Sentencing Guidelines Recommendations and Requests.**

1. **Acceptance of Responsibility.** If the defendant clearly accepts responsibility for the offense, the defendant will be entitled to a reduction of two levels in the combined adjusted offense level, under USSG § 3E1.1(a). The Government will move for an additional one-level reduction in the combined offense level under § 3E1.1(b) if the following conditions are met: (1) the defendant qualifies for a decrease under § 3E1.1(a); (2) the offense is level 16 or greater; and (3) the defendant has timely notified authorities of the defendant's intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. If, before sentence is imposed, the

defendant fails to meet the criteria set out in USSG § 3E1.1, or acts in a manner inconsistent with acceptance of responsibility, the Government will withdraw or not make such a recommendation.

2. **Stipulated Fine**. The parties agree to jointly recommend a fine of $100,000 per count for a total of $600,000. The parties will attempt to agree upon a fine payment schedule and submit that to the Court prior to sentencing. Failure to reach such an agreement shall have no effect on the remainder of this Plea Agreement. Both parties agree that this fine represents the minimum necessary to reflect the seriousness of the offense, to promote respect for the law related to the regulation of drugs and dietary supplements, and to provide adequate deterrence to others involved in this industry.

## VI. WAIVER OF APPEAL AND 28 U.S.C. § 2255 RIGHTS

A. In exchange for this Agreement, and except as provided in subparagraph B, the defendant waives any right to appeal or to collaterally attack the conviction, entry of judgment, and sentence.

The defendant acknowledges that this waiver shall result in the dismissal of any appeal or collateral attack the defendant might file challenging the plea, conviction or sentence in this case. Further, if the defendant violates this waiver it will be a breach of this Agreement and the Government may withdraw from this Plea Agreement and take other remedial action.

If the defendant believes the Government has not fulfilled its obligations under this Agreement, the defendant will object at the time of sentencing; further objections are waived.

B. Notwithstanding subparagraph A, the defendant shall retain the right to file one direct appeal only if one of the following unusual circumstances occur; the defendant understands that these circumstances occur rarely and that in most cases this Agreement

constitutes a complete waiver of all appellate rights:

1. the sentence imposed by the District Court exceeds the statutory maximum;

2. the District Court arrived at an advisory Sentencing Guidelines range by applying an upward departure under Chapter 5K of the Guidelines; or

3. the District Court exercised its discretion under 18 U.S.C. § 3553(a) to impose a sentence that exceeds the advisory Sentencing Guidelines range as determined by the District Court.

4. additionally, if the District Court imposes a sentence of imprisonment, the defendant may appeal the imposition of the prison term.

Notwithstanding subparagraph A, the defendant may file one habeas petition (motion under 28 U.S.C. § 2255) for ineffective assistance of counsel only if: (1) the motion is based solely on information not known to the defendant at the time the District Court imposed sentence; and (2) in the exercise of reasonable diligence, the information could not have been known by the defendant at that time.

## VII. PROVIDING INFORMATION FOR THE PRESENTENCE REPORT

The defendant agrees to provide material financial and other information requested by a representative of the United States Probation Office for use in preparing a presentence report. Failure to execute releases and provide such information violates this Agreement. Such failure will subject the defendant to additional penalties, including an enhancement under USSG § 3C1.1, or an upward departure under § 5K2.0, and relieve the Government of the obligations in this Agreement. Such failure will not, however, constitute grounds for withdrawing the plea of

guilty unless the Government so requests.

## VIII. NO RIGHT TO WITHDRAW PLEA

The defendant understands that the Court may not follow the recommendations or requests made by the parties at the time of sentencing. The defendant cannot withdraw from this Plea Agreement or the guilty plea, regardless of the Court's actions.

## IX. CONSEQUENCES OF VIOLATING AGREEMENT

**A. Government's Options.** If the defendant fails to keep any promise in this Agreement or commits a new crime, the Government is relieved of any obligation not to prosecute the defendant on other charges, including charges not pursued due to this Plea Agreement. Such charges may be brought without prior notice. In addition, if the Government determines after sentence is imposed that the defendant's breach of the Agreement warrants further prosecution, the Government may choose between letting the conviction(s) under this Plea Agreement stand or vacating such conviction(s) so that such charge(s) may be re-prosecuted. If the Government determines that a breach warrants prosecution before sentencing, it may withdraw from the Plea Agreement in its entirety.

**B. Defendant's Waiver of Rights.** If the defendant fails to keep any promise made in this Agreement, the defendant gives up the right not to be placed twice in jeopardy for the offense(s) to which the defendant entered a plea of guilty or which were dismissed under this Agreement. In addition, for any charge that is brought as a result of the defendant's failure to keep this Agreement, the defendant gives up: (1) any right under the Constitution and laws of the United States to be charged or tried in a more speedy manner; and (2) the right to be charged within the applicable statute of limitations period if the statute of limitations expired after the

defendant entered into this Agreement.

## X. MISCELLANEOUS

A. **<u>No Other Terms</u>**. This Agreement is the complete understanding between the parties, and no other promises have been made by the Government to the defendant or to the attorney for the defendant. This Agreement does not prevent any governmental agency from pursuing civil or administrative actions against the defendant or any property. Unless an exception to this paragraph is explicitly set forth elsewhere in this document, this Agreement does not bind or obligate governmental entities other than the United States Attorney's Office for the District of Idaho. The Government will bring the defendant's cooperation and pleas to the attention of other prosecuting authorities at the defendant's or defendant's counsel's request.

## XI. UNITED STATES' APPROVAL

I have reviewed this matter and the Plea Agreement. I agree on behalf of the United States that the terms and conditions set forth above are appropriate and are in the best interests of justice.

[signature] 5/7/2012

WENDY J. OLSON  
United States Attorney  
Date

[signature] 5/7/2012

KEVIN T. MALONEY  
Assistant United States Attorney  
Date

[signature] 5/7/12

For: JAMES SMITH  
Special Assistant United States Attorney  
Date

## XII. ACCEPTANCE BY DEFENDANT AND COUNSEL

I have read and carefully reviewed every part of this Plea Agreement with my attorney. I understand the Agreement and its effect upon my potential sentence. Furthermore, I have discussed all of my rights with my attorney and I understand those rights. No other promises or inducements have been made to me, directly or indirectly, by any agent of the Government, including any Assistant United States Attorney, concerning the plea to be entered in this case. In addition, no one has threatened or coerced me to do, or to refrain from doing, anything in connection with this case, including to enter a guilty plea. I am satisfied with my attorney's advice and representation in this case.

JEREMY DELUCA
Defendant

5/7/12
Date

I have read this Plea Agreement and have discussed the contents of the Agreement with my client. The Plea Agreement accurately sets forth the entirety of the Agreement. I concur in my client's decision to plead guilty as set forth above.

DAVID NEVIN AND SCOTT McKAY
Attorneys for the Defendant

5 / 7 / 2012
Date